Thank you, Your Honor. Good morning, Your Honors. Good morning, Learned Counsel. May it please the Court, James Gale from Feldman Gale on behalf of Plaintiff Appellant, St. Jude Medical S.C., Inc. Rays Judicata does not bar St. Jude Medical's action against Mrs. Cormier and the underlying action for two primary reasons. First, St. Jude Medical could not have sued Mrs. Cormier in the prior arbitration in Florida due to the fact that, number one, the exclusive venue provision in her employment contract specified suing her in a Minnesota state court or federal court. Number two is the inability to join her in that arbitration, the prior arbitration proceeding. I thought you invited her into the arbitration down there. No, actually we did not yet invite her. What we did is we first invited her husband, and then if her husband accepted, we would have invited her in. Because her husband did not accept, we felt there was no reason to sue her. We knew then that we would have to piecemeal the lawsuits, and we could not sue them all in one joint. She'd have a marital interest then if he joins you? Yes, but under Rucker v. Schmidt, you are able to sue joint tortfeasors individually. And so the fact that they are merely a marital spousal unit did not prevent us from suing any and all of the tortfeasors jointly or severally. So we could sue Medtronic for its torts, Annette Cormier for her torts, as well as her breach of fiduciary duties arising under her contract, as well as Mr. Cormier for the breaches of his duties arising under his contracts. The problem in this case, Your Honors, was that we were not able to get everyone in the same forum at the same time, because they all had three different contracts and or three different forum that we had to proceed in. So we had no choice but to sue Medtronic for tortious interference, which then resulted in a private arbitration between Medtronic and St. Jude. Then we sued Joe Cormier in an arbitration pursuant to his contract under the AAA, and we sued Annette Cormier as set forth in her contract in the federal district court in Minnesota. And that's the underlying action. Counsel, at this point, is all you care about is what she did while she was an employee of yours? That is most of what we're suing. Why isn't it all at this point what you're suing about? Anything she did when she wasn't an employee, I think you're in deep trouble on. Tell me why you're not. The reason why is because there are things that we sued Medtronic for and that the arbitration panel determined were carried out by agents other than Annette Cormier. They were carried out by the vice president of sales. They were carried out by the vice president of the Florida Regional Division. This is not a situation, as Mrs. Cormier would portray, where the claims against Medtronic were purely claims that were based upon respondeat superior against Annette Cormier. So any claims that did not go against Mrs. Cormier or Medtronic's actions through Mrs. Cormier are actually fair game. That has to be parsed out. But I agree with Your Honor that our best case and our simplest case is suing her for actions that occurred prior to the time she became an employee of Medtronic. While she's still your employee? Correct. Clearly. No question about it. How long a period of time was that? From the period of time from basically about July 08 through February 09 when she left. So nine months or so? Yeah. In that nine-month period? Yes. And how many claims do you have on that? Are they sizable or are they insignificant? Yes. No, they're very sizable. And, in fact, the damages we're seeking for that are different from the damages that we sought and recovered in the underlying action against Medtronic. The damages that we're seeking as set forth in the complaint is count one for unjust enrichment, count six for breach of duty of loyalty. And there are other claims. But those are the primary claims. And, in fact, the primary claims predicate or are predicated upon a damage claim that's set forth under the restatement of agency 407 subparagraph 1, wherein you can sue your agent for disgorgement for ill-gotten gains. And so, as a result, that's what we're seeking. Why do you like the term your agent? Why don't you use the term your employee? We can use the term employee. But as an employee, she's also an agent. Yeah, but are you trying on the agent to encompass something more than the time she was an employee? Is it a trick? No, there's no need to. No, because there's no trick. There's no magic language there. It's just that it falls squarely within the scope of the restatement of agency, which clearly says that you can sue your agent, your employee, for ill-gotten gains, and you can bring a separate action for actual damages that are incurred. And Minnesota has adopted that restatement of agency 407 sub1. So you're not seeking any damages based upon her post-employment agreement? We're not seeking any damages based upon her post-employment actions as an employee of Medtronic. We're not seeking any damages where she was a privy to Medtronic, period. So any argument, any rationale that may have existed at the lower court wherein the court indicated that Mrs. Cormier was a privy to Medtronic is arguably not the case. The court never got into the factual underpinnings. Counsel, is there a gap in her employment? No. Between the time she stops working for you and starts working for them? She resigned on Friday, February the 6th, and she began work on Monday, February the 9th of 2009. So maybe two days, but it's trivial. Trivial would be an overstatement, Your Honor. Thank you. Thank you. But she had disclosed all your trade secrets and everything before she left so that you have nothing left to pursue her for a time after she left that would have been covered with the one-year agreement after she left. Unfortunately, we were not able to conduct discovery in the underlying case to see what she may have disclosed that's pursuant to this case. We did get into certain aspects of theft of trade secrets as it related to her employment as a Medtronic employee, and as I say, that would be out of bounds for us in this underlying action. We are not seeking to duplicate any claims against Mrs. Cormier while she was an employee of Medtronic and while she was in privity with Medtronic. Period. End of story. Counsel, are there any significant different operative facts in your claims against Mrs. Cormier versus the claims against Medtronic? Absolutely. And, in fact, this is where Florida law absolutely comes into play. And as your honors know from the C.H. Robinson case, which was authored by this panel or by Judge Beam and this court, the law of the state of Florida has to apply. And what the law of the state of Florida says is that the facts supporting the causes of action must be identical for there to be raised judicata. And, in fact, the facts supporting the cause of action, fictitious interference against Medtronic, is very different than the factual aspects supporting the claims against Mrs. Cormier for unjust enrichment, breach of her duties of loyalty, et cetera, et cetera. So the factual underpinnings are not, quote, identical, which is what they have to be under Florida law. So I see that my initial time is up. Unless the panel has questions based on my initial argument, I'll reserve the rest of my time for rebuttal. All right. Thank you, your honors. Mr. Pentelovich. Good morning.  I want to begin by addressing Mr. Gayle's point that they could not have sued Annette Cormier in Florida. The law in Florida, as set forth by St. Jude, is that before you get to the four identities analysis for raised judicata purposes, the first question that has to be answered is whether the court in the first action had subject matter jurisdiction over the party, over the cause of action. Excuse me. In this case, Annette Cormier had a choice of forum clause in her employment agreement with St. Jude. However, it is the law in Florida, and it is the law in this circuit, that the existence of a choice of forum clause does not deprive the court of subject matter jurisdiction. The citation for that, your honors, are two cases. Manerike, they raised this, by the way, for the first time, the subject matter jurisdiction issue in their reply brief, so we did not have a chance to reply. So the two citations I would give you are Manerike, M-A-N-A-R-I-Q-U-E. Counsel, to use your time, why don't you send us a 28-J letter with the citation. I will send you 28-J. And proceed with your argument. Yeah, go ahead. Manerike v. Fabree is a Florida Supreme Court case that holds that a choice of forum clause does not deprive the court of subject matter jurisdiction. It gives the court the opportunity to decline to exercise subject matter jurisdiction. This court held the same thing in public school retirement system in Missouri v. State Street Bank and Trust. It is the law in every federal circuit, as well as in Florida. Counsel, could the Florida arbitration have resolved St. Jude's claims against Ms. Cormier? They did, Your Honor, because what happened in Florida is they sued in Dade County Circuit Court, which had subject matter jurisdiction over the claims, as well as personal jurisdiction over Mrs. Cormier, who is a resident of Dade County, Florida. They asserted in that case a conspiracy between Medtronic, Mr. Cormier, and Mrs. Cormier, that started while she was an employee of St. Jude and continued after she became an employee of Medtronic. So there's privity because a conspiracy is alleged. It's the law in Florida. It's the law in Minnesota. It's the law in the circuit that co-conspirators are in privity. There's also privity because she was an employee of Medtronic beginning in February of 2009, and everything that happened after that, there's also privity. So there's privity while she's employed by St. Jude. And again, by the way, in the complaint in this action, they allege conspiracy. Counsel, an employee like this is in privity with both these parties being sued? Because as an employee, she's in privity with, of course, her current employer, which was then St. Jude and Medtronic at the same time? That doesn't sound like agency law to me. Agent master, you know, there's one of each. Well, it's conspiracy law. The fact that she was – there's a conspiracy alleged. The law is that when conspiracy is alleged, conspirators are deemed to be in privity, and that's for race judicata purposes. The conclusion is, yes, she's in privity with both of them at the same time. That would be correct. Once the alleged conspiracy occurred, that would be true. Do you know if any courts analyzed it that way? Well, I mean, the courts don't seem to – I can't tell you that I've seen another case where somebody alleged a conspiracy between their employee and somebody else this overtly. The Tarnovsky case. Again, they sprung that on you in the reply brief. And I know it's Minnesota law. I understand Minnesota law. Well, the Tarnovsky's a restatement, okay? And they're citing – he mentioned restatement first. It carries over into the restatement third. But here's the thing. That section of the restatement and Tarnovsky are a very narrow exception. They permit recovery of both compensatory damages and restitution if, in the course of executing the agency, the agent earns a secret profit. So in the course of executing the agency, the typical case would be a real estate – a person engaged to sell real estate either takes a bribe to enter into the contract or is secretly the buyer. In this case, they're not alleging that she earned a secret profit on a transaction she entered into for St. Jude, which is the situation – Was it a secret to St. Jude for a while? I'm interrupting you because you said a magic word. Was it a secret to St. Jude for a while? I suppose until she went to work for Medtronic, they didn't know she was planning to go to work for Medtronic. So to the extent that they would not have had knowledge until she gave notice of her resignation, that would be true. But the point here is that exception would only apply if she took a profit in order to induce St. Jude to enter into a transaction or secretly profited from a transaction she entered into for St. Jude. Here what they're claiming is that they want restitution of the salary Medtronic paid her, okay, which was money she earned at Medtronic. It wasn't money she earned entering into a transaction or acting as an agent for a transaction for them. And if you read the current section that is the successor to the one cited in Starnowski, and it's section 8.02 of the Restatement Third of Agency. If you read the commentary to that, which by the way discusses Starnowski, if you read the cases, you'll see that this is a very narrow exception that doesn't apply here because she wasn't acting as agent for St. Jude in a transaction for St. Jude in which she made a secret profit that St. Jude otherwise would have made. What they're claiming is she stole business from them. And that's not what section 8.02 of the Restatement Third addresses. So you've got two major problems. One is the court and the arbitrators in Florida would have had subject matter jurisdiction. Whether they would have declined to exercise it due to the forum selection clause is a wholly different question and doesn't affect the res judicata analysis. It's a hurdle we get over to get to the four identities. And when you get to the four identities, the allegations of the complaint in this case and the allegations of the complaint in the underlying Florida case are identical. Mr. Gale now is trying to change. In his argument today, he really narrowed the scope of the complaint that was dismissed from it includes the entire conspiracy from day one to the end of time. And I suppose in their view, as they pleaded, it's still ongoing because Mr. and Mrs. Cormier now both work for Medtronic. Is there an argument here that Ms. Cormier was both an agent and an employee of St. Jude? She worked with her husband, who was an independent contractor for St. Jude for a while, and then she became an employee. Is there an argument that she was functioning in both capacities all the time that she was there? That she was at St. Jude or after she left? Well, while she was there, she was participating in her husband's enterprise as a part of that and also, or is there a, did the identities emerge? There's lots of case laws, I'm sure you know, that talk about when an agent, when an employee is an agent and when an employee isn't an agent. And I think the argument can be made that to the extent that she was out on St. Jude's behalf, trying to sell St. Jude products to St. Jude's customers, she was acting as an agent on St. Jude's behalf as well as being employed by them. But once she went to work at Medtronic... She was acting as an agent in some instances with her husband's enterprise. Did she have two hats on? Is there any argument made there? Before she went to Medtronic? Yes, before she went. I think you could, I think St. Jude could argue and plausibly argue that she was both an agent and an employee. But that's not been raised. It's not been raised and it's really not relevant to the race judicata analysis, which it looks at privity. Is there privity? And clearly because of the... Keep in mind, privity is measured not by the findings of fact and conclusions of the trial court in the first case or the arbitrators. It's measured by the allegations of the complaint. And the allegations are that, number one, she was a conspirator with Medtronic. And the other is that while employed by Medtronic, she acted on Medtronic's behalf and for Medtronic's benefit. And that Medtronic had respondeat superior liability for her. And her identity as a conspirator was as an employee. Well, as they've pleaded it, she became a conspirator with Medtronic while still a St. Jude employee. And continued after she became a Medtronic employee. So that's why you have two different measures of privity. The law involving conspirators' privity and the law regarding employees' privity. And she has privity both ways. The facts here are the same. There's no different facts. The causes of action are slightly different. But in terms of res judicata analysis of privity, as long as the operative facts of the causes of action are the same, res judicata would apply. And what Mr. Gale was saying to you today, which is very different from what the pleadings say, is they are not seeking damages for, or compensatory damages, for the period after she joined Medtronic. That's not what the pleadings in this case said. That's not what the dismissal was. They're trying to narrow it to this narrow restitutionary damage under the restatement. And that doesn't apply because that exception doesn't apply here. Counsel, before the district court, did they offer this narrowing approach that we've discussed? No. Well, think about the no. Not at all? Are you sure when we look at all of it? I don't recall them doing so. To your knowledge. I don't recall them doing so. I mean, I recall very well the oral argument in that case because I remember Judge Frank grilled me pretty well. I don't remember them narrowing it in that way. To my recollection, the restitution argument, as it's now being made, was first really refined and presented in their reply brief. It was raised a little bit in their opening brief in this case, but to my mind it was most clearly stated in their reply brief. Could I tell you that somewhere during the course of oral argument before Judge Frank they didn't say something? I can't remember it that well. You do have the transcript in the record. So ultimately what we have here is they are trying to sue. They're disappointed with the outcome of the arbitration. They asked for about, give or take, $25 million in damages. They received $2.6 million. So this is a second bite at the apple. It's a classic attempt. We don't like the first outcome. We want to come at it another way. And simply the law of res judicata doesn't permit that. I mean, this is a very different case from Lebrano, C.H. Robinson v. Lebrano, which Mr. Gale presented, because there the claim, which was barred by res judicata, was under the Federal Rules of Civil Procedure a compulsory counterclaim in the first action. It should have been asserted in that action. It wasn't, and that's why C.H. Robinson was barred by res judicata in the second action in Lebrano, a case that Judge Beam wrote the opinion. And that was my, I argue, that appeal. So it's a very different situation. But while the fact of the choice of forum clause is interesting, it is not legally significant. And, you know, Mr. Gale talks about, well, they had to bring three separate lawsuits. The fact of the matter is they could have brought a single lawsuit in Minnesota under the forum selection clause against both Annette Cormier and Medtronic. They chose not to. But those are their choices, and they have to live with those choices now after they've gone to judgment in the first case. Unless you have additional questions, and I see I have additional time, but I don't really have more to say unless you want to answer something. Just to clarify, Florida law is like most states' law on privity. It says it's case by case. It depends on all the facts. Right? That is the basic Florida Supreme Court law. Right. Yes. I thought so. That's the basic law, though. I can't tell you how many cases are that say employers and employees, when there's a responding out superior alleged, are in privity. Thank you, Your Honor. Honors, I should say. Mr. Gale. Thank you, Your Honors. You can lower that podium back down. I'm going to need to. Mr. Pentelovich is just slightly larger than I am. He offered me a box before. Going back to a point that I believe both Judge Benton and Judge Beam raised earlier, you can only serve one master at a time. That's the common law of virtually every state in this nation. Master-servant law is such that, as an employee, you serve your master and only your master. Well, I think it's you should. You should. You should. Yes, Your Honor. You should. She did not. Tell me, most importantly here, did you raise this below or not? Absolutely. And in fact, in the complaint itself, in paragraph 39 and 39C of the complaint, it says, we're suing for disgorgement. We're suing for her breach of fiduciary duties. Count six, which is paragraphs 84 through 86, make it clear that, in fact, we're suing for her breach of fiduciary duties. What's interesting here is that the panel has raised a question as to who she was really serving, who she was acting on behalf of. You want to know the truth of it? You know who she was serving? She was serving herself. She was serving her husband. That's who she was, the principal person that she was representing. While she was employed by you. While she was employed by us and while she was employed by Medtronic. Isn't that too broad, Counsel, because don't all employees do that every day? Not like this. Not like this. Because in many instances, and that's why I was very careful in answering Your Honor's question with respect to are there aspects post-employment with Medtronic whereby she can be sued by us? And the answer is yes, because she was not in privy with Medtronic the entire time. She was actually negotiating against Medtronic, and she and her husband were negotiating for increased benefits so that St. Jude didn't rehire her back. So that's what I'm saying. This is why when you get into the analysis, the factual underpinnings of the arbitration award, the factual analysis of both cases, which really you must do in this case, especially on this case in a re-raised judicata situation, you must look at it as a factually specific situation. What post-St. Jude employment acts do you point us to? You said she violated her fiduciary duty both when she was an employee of St. Jude and an employee of Medtronic. So what acts when she was, after her employment ended with you, do you point us to? Then I misspoke if I said there were breach of fiduciary duties after she left us. Then maybe I misheard what you said. We have claims against her, arguably, that may survive a true re-raised judicata factual analysis after the court compares the factual allegations, not just the factual allegations, Mr. Penelovic and Mrs. Cormier take the position that, well, this is all a matter of pleading. What you pled in the first action has to be compared to what you pled in the underlying action. That's not the analysis. The analysis is what is the actual determination and what is the actual scope of the judgment that was entered, what were the factual underpinnings of the claims that were determined in the underlying action? Not what was pled, but what was determined. So there are a number of cases in Florida law whereby a plaintiff can go ahead and seek a second claim or a second cause of action because it involves separate facts underpinning the causes of action. So, for example, we cite in our brief Tyson v. Viacom, whereby the first claim was a whistleblower action based on the employee's employment. The second action was a breach of contract and fraud action, again arising from the employee's same employment and employment agreement. Quinn v. Advanced Lighting, great case. First claim was for breach of oral contract. Second claim relating to the same core of operative facts was for unjust enrichment for breach of that oral contract. All of these cases were cited with approval by the 11th Circuit Court of Appeals recently in Lozman v. City of Rua de Ara Beach, 11th Circuit, 2013. So here you have cases whereby it all arises from a same or similar transaction of facts. However, they are not the exact or identical facts to support each cause of action, and that is what Florida law mandates. Now, addressing some of the other points that Mr. Penalovich raised. One of the things he asserted is that basically your suit now is a sour grapes suit because you didn't get what you wanted in Florida. Oh, no, not at all. What we're seeking here is very different than we want in the lower court against Medtronic. So it's not as though we're having sour grapes. What we're saying is that the damages that we sued Medtronic for in the underlying action against Medtronic in the arbitration, we sought lost profits. Breach lost profits relating to their interference with Mr. Cormier's contract. Now we're seeking other things that relate to primarily unjust enrichment, breach of her contract, breach of fiduciary duties, and we're not seeking lost profits that arise from any of that because a lost profits analysis would not be appropriate. Thank you very much. I see my time is up unless the panel has any further questions for me. Thank you, Mr. Gale. Thank you also, Mr. Penalovich. Appreciate both counsel's presence and argument this morning. The briefing which you submitted, you've given us a very challenging case. We will proceed to review it and render a decision in due course. Thank you.